FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 04, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOSE ANTONIO GONZALEZ-VALENCIA, aka JOSE ANTONIO VALENCIA GONZALEZ,<br><br>　　　　Defendant. | No. 1:18-cr-02044-SAB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>**\*\*USMS ACTION REQUIRED\*\*** |

　　A pretrial hearing was held on August 28, 2019. Defendant was present and represented by Paul Shelton. The United States was represented by Assistant United States Attorney Richard C. Burson.

　　Pending before the Court is Defendant's Motion to Dismiss, ECF No. 21. Defendant is charged with Being an Alien in the United States After Deportation, ECF No. 1. He asks the Court to dismiss the Indictment, arguing that the underlying removal order that was issued for him is invalid because the immigration court lacked jurisdiction. He argues that because the United States

//
//
//

**ORDER GRANTING MOTION TO DISMISS ~ 1**

cannot prove an essential element of §1326[1], namely a valid prior order of exclusion, deportation, or removal, the Indictment should be dismissed.

At the hearing, the parties addressed the Motion to Dismiss. The Court took the matter under advisement. After careful consideration of the parties' briefing and oral argument, the Court grants Defendant's Motion to Dismiss, and dismisses the Indictment in this case.

## Background Facts

Defendant is alleged to be a Mexican citizen who first entered the United States when he was approximately 13 years old. His first encounter with immigration officials in the United States was on or about June 7, 2000, when he was located by Immigration and Nationality Services ("INS") Agents while he was in state custody on pending DUI charges. Defendant opted for voluntary departure. He was removed to Mexico on July 14, 2000.

By September 2000, he encountered INS officials again at the Sunnyside City Jail where he was in custody on a charge of driving with a suspended license. He remained in local custody in Sunnyside and Yakima for a few months.

In December 2000, after his request for voluntary departure was denied, immigrations officials prepared a Notice to Appear ("NTA") to initiate removal proceedings against him. The NTA instructed Defendant to appear for a removal hearing before an immigration judge ("IJ") at an immigration court located on Second Avenue in Seattle, Washington, at a "Date and Time to be set."

INS officials lodged a detainer with the Yakima County Jail. Defendant was taken into immigration custody on December 29, 2001, at which time bail was set

---

[1] To convict an alien criminal defendant of illegal reentry under 8 U.S.C. § 1326, the United States must prove that the alien left the United States under order of exclusion, deportation, or removal, and then illegally reentered. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1079 (9th Cir. 2011).

**ORDER GRANTING MOTION TO DISMISS ~ 2**

at $5000. He was served with the NTA on January 2, 2001. The Certificate of Service does not indicate that Defendant was provided oral notice in any language of the time and place of his hearing or the consequences of failing to appear at the hearing. Defendant signed a "Request for Prompt Hearing section."[2]

On January 8, 2001, the immigration court faxed a Notice of Hearing (NOH) to Defendant's custodial officer that indicated Defendant's hearing was to be held the next day, on January 9, 2001. The NOH indicated that the location of the removal hearing was on Airport Way South in Seattle, which was a different address than was listed on the NTA. Defendant does not recall ever being served with a copy of the NOH before his hearing.

Defendant's removal hearing took place on January 9, 2001. The hearing was held at the Second Avenue address listed in the NTA, not on Airport Way South. The IJ determined that Defendant was removable. Defendant made no application for relief and the IJ ordered him removed to Mexico. The Order states that Defendant waived his right to appeal.

Defendant does not recall the IJ advising him of (1) his right to seek assistance of an attorney; (2) his eligibility for voluntary departure or asking if he wanted to apply for it; and (3) his right to appeal.

Defendant was removed on January 12, 2001. He has since been deported on three occasions—March 2007, August 2009, and September 2010—all pursuant to reinstatements of the January 9, 2001 order.

//

---

[2] In his declaration, Defendant states that he recalls being served with paperwork while in immigration custody, but he does not recall the immigration officer translating the NTA to him or explaining what was contained in it. Notably, it does not appear the "Request for Prompt Hearing" section was translated into Spanish or otherwise explained to him. ECF No. 21-1, Ex. 6.

**ORDER GRANTING MOTION TO DISMISS ~ 3**

**Discussion**

This Court has consistently granted motions to dismiss where the record shows that INS did not follow the two-step notice process recognized in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), including when the defendant did not receive timely notice of the removal hearing date or the NTA failed to list the correct address of the immigration court.[3] *See United States v. Hernandez-Fuentes*, 2019 WL 1487251 (E.D. Wash. Mar. 20, 2019); *United States v. Cruz-Aguilar*, __ F.Supp.3d. __, 2019 WL 316460 (E.D. Wash. July 12, 2019); *United States v. Rubisel DelCarmen-Abarca*, 4:19-cr-6005-SAB, ECF No. 64.

Here, it is clear the two-step notice process was deficient. The NTA did not list a date and time for his removal hearing, the NOH was sent only one day before his removal hearing and there is nothing in the record to suggest that Defendant ever received the NOH. Moreover, the NTA and the NOH provided conflicting addresses.

**A. The United States' Arguments**

In this case, the United States has taken a different approach and presented new arguments as to why the Court should not grant Defendant's Motion. First, it argues the relevant regulation, 8 C.F.R. § 1003.14(a), does not limit the immigration's court's subject-matter jurisdiction because it is merely a "claims processing rule." And the purpose of a claims-processing rule is to "promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," rather than govern a court's adjudicatory authority, relying on *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). Because the regulation is a claims processing rule, Defendant would have

---

[3] In *Karingithi*, the Ninth Circuit held the regulatory definition of a NTA governs the immigration court's jurisdiction over an individual in removal proceedings. *Id.* at 1160.

**ORDER GRANTING MOTION TO DISMISS ~ 4**

to show prejudice to justify invalidating the IJ's removal order, which he cannot do.

Second, the United States argues the regulations promulgated by the Attorney General cannot limit the immigration court's jurisdiction because an agency does not have authority to limit subject matter jurisdiction associated with Article III courts. Said another way, agencies do not have the authority to define their own jurisdiction. It argues 8 C.F.R. §1003.14(a),[4] which describes when jurisdiction vests before an IJ, does not limit the broad statutory jurisdictional grant, nor restrict or define when the immigration courts have power to hear cases.

Third, because the immigration statutes contemplate the removal of aliens without any service at all, *see e.g.* 8 U.S.C. §1229a(b)(5)(B), which provides that the Attorney General need not provide an alien with notice of an impending removal "if the alien has failed to provide the address required," Defendant's arguments that satisfying the regulations is crucial to establishing the IJ's jurisdiction is untenable, since § 1229(a)(b)(5)(B) expressly permits an IJ to order the removal of aliens over whom the IJ theoretically would not have jurisdiction. The United States sees § 1229(a)(b)(5)(B) as a "clear statement" that the regulations were not intended to limit the IJ's authority.

In the alternative, the United States argues that even if 8 C.F.R. § 1003.14 is jurisdictional, the Notice to Appear complied with the regulations, and even if a

---

[4] (a) Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service. The charging document must include a certificate showing service on the opposing party pursuant to § 1003.32 which indicates the Immigration Court in which the charging document is filed. However, no charging document is required to be filed with the Immigration Court to commence bond proceedings pursuant to §§ 1003.19, 1236.1(d) and 1240.2(b) of this chapter.

**ORDER GRANTING MOTION TO DISMISS ~ 5**

subsequent hearing notice were required, the notice provided to Defendant one day prior to his hearing was sufficient.

Finally, the United States argues Defendant is precluded from attacking the underlying deportation proceedings because he cannot meet the requirements set forth in 8 U.S.C. §1326(d).[5]

### B. The Court's Analysis

In deciding the validity of an underlying removal order, the Court is bound by the Ninth Circuit's holding in *Karingithi*. In that case, the Circuit answered the question as to whether the immigration court has jurisdiction over the removal proceedings by looking to the federal immigration regulations. 913 F.3d at 1158.[6] Notably, the Circuit held that in that case the charging documents satisfied the

---

[5] (d) Limitation on collateral attack on underlying deportation order

In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. §1326(d).

[6] "We consider whether the Immigration Court has jurisdiction over removal proceedings when the initial notice to appear does not specify the time and date of the proceedings, but later notices of hearing include that information. This question is governed by federal immigration regulations, which provide that jurisdiction vests in the Immigration Court when a charging document, such as a notice to appear, is filed. 8 C.F.R. §§ 1003.13, 1003.14(a)." *Id*. at 1158.

**ORDER GRANTING MOTION TO DISMISS ~ 6**

regulatory requirements so the IJ had jurisdiction over the removal proceedings. *Id.* at 1159. It noted the petitioner received actual notice of the hearings through multiple follow-up notices that provided the date and time of each hearing. *Id.*

Here, the underlying removal order is invalid because the two-step process approved in *Karingithi* was not followed in that Defendant's removal hearing occurred only 7 days after service of the NTA and 1 day after purported service of the NOH; there is no proof in the record to establish that Defendant ever received the NOH or even that the custodial officer received it; and the NOH listed an incorrect address of the immigration court.

The Court rejects the United States' argument that the statutory scheme contemplates the removal of aliens without any service at all. That is not a correct reading of the statute. Removal of aliens without service is only permitted if the alien had first received written notice but failed to provide the proper address as required by 8 U.S.C § 1229(a)(1)(F).[7] It goes without saying that the obligation

---

[7] (b)(5) Consequences of failure to appear

(A) In general

Any alien who, after written notice required under paragraph (1) or (2) of section 1229(a) of this title has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable (as defined in subsection (e)(2)). The written notice by the Attorney General shall be considered sufficient for purposes of this subparagraph if provided at the most recent address provided under section 1229(a)(1)(F) of this title.

(B) No notice if failure to provide address information

No written notice shall be required under subparagraph (A) if the alien has failed to provide the address required under section 1229(a)(1)(F) of this title.

**ORDER GRANTING MOTION TO DISMISS ~ 7**

under § 1229(a)(1)(F) is created only after the service of a valid charging document.

Finally, Defendant does not have to satisfy 8 U.S.C. § 1326(d) to collaterally attack his underlying deportation order because that order was issued *ultra vires*. *See Lazaro v. Mukasey*, 527 F.3d 977, 980 (9th Cir. 2008) ("A petitioner is entitled to relief from a defective NTA if he shows that the Immigration Court lacked jurisdiction."). Defendant is not collaterally attacking his removal order. On the contrary he is arguing that the United States cannot prove a necessary element of his charge, namely, a lawful prior removal.

## Conclusion

Defendant has shown that his underlying removal proceedings were invalid because he did not receive a valid charging document. As such, the immigration court was never vested with subject-matter jurisdiction and the removal order that it issued is void and without legal effect. Without a valid removal order, the United States cannot establish an essential element of 8 U.S.C. § 1326, that is, that Defendant was previously lawfully deported. Therefore, it is appropriate to dismiss the Indictment.

//
//
//
//
//
//
//
//
//
//
//

**ORDER GRANTING MOTION TO DISMISS ~ 8**

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss, ECF No. 21, is **GRANTED**.

2. The Indictment in the above-captioned case is **DISMISSED**, with prejudice.

3. The U.S. Marshals Service is directed to release Defendant from custody forthwith.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order, provide copies to counsel, and close the file.

**DATED** this 4th day of September 2019.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING MOTION TO DISMISS ~ 9**